IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 29, 2001 Session

## GEORGE MICHAEL TIPTON, ET AL. v. AXIS FABRICATION & MACHINE COMPANY, ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-11629    W. Dale Young, Judge**

**FILED NOVEMBER 29, 2001**

**No. E2001-00258-COA-R3-CV**

This is a personal injury case. George Michael Tipton and his wife, Kristie Tipton, filed suit seeking damages flowing from injuries that Tipton[1] sustained when he attempted to catch a piece of metal coming from a cutting machine owned by the defendant Axis Fabrication & Machine Company ("Axis") and being operated at the time by an Axis' employee, the defendant Jeff Thomas.[2] Following the close of the plaintiffs' proof, the defendants moved for a directed verdict, which the trial court granted. The trial court based its decision on its finding that the plaintiffs had failed to prove that the defendants did not act with reasonable care. The plaintiffs appeal. We vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., filed a separate opinion concurring in part and dissenting in part.

Ralph Brown, Knoxville, Tennessee, for the appellants, George Michael Tipton and Kristie Tipton.

Paul D. Hogan, Jr., Knoxville, Tennessee, for the appellees, Axis Fabrication & Machine Company and Jeff Thomas.

**OPINION**

---

[1]References in this opinion to "Tipton" are references to the injured party.

[2]At the time of the subject incident, Tipton was an employee of Axis. This action originated as a suit for worker's compensation benefits; however, prior to trial, an agreed order was entered permitting the case to proceed as a tort action. Axis agreed not to raise a worker's compensation bar as a defense to the plaintiffs' claims; in return, Tipton agreed to dismiss his worker's compensation claim with prejudice.

I.

The sole issue on this appeal is whether the trial court erred in granting the defendants a directed verdict. A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. *Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn. 1994); *Long v. Mattingly,* 797 S.W.2d 889, 892 (Tenn. Ct. App. 1990). In reviewing a grant of a directed verdict, we must "take the strongest legitimate view of the evidence favoring the opponent of the motion." *Long,* 797 S.W.2d at 892. In addition, we are required to indulge all reasonable inferences from the evidence in favor of the nonmovant; all evidence contrary to the opponent's position must be disregarded. *Eaton,* 891 S.W.2d at 590; *Long,* 797 S.W.2d at 892. With this standard in mind, we will now review the evidence presented by the plaintiffs.

At the time of the subject incident, Tipton was employed as a welder for Axis. His supervisor was the defendant Jeff Thomas. Thomas had trained many Axis employees, including Tipton, on the use of the "Piranha," a metal fabricating machine. The Piranha is a hydraulic machine whose operation mimics that of a pair of scissors. It is designed to cut metal. The blades come together slowly rather than in a chopping motion. The metal is placed in the front of the machine and fed through the blades before exiting the back of the machine. Originally, the machine had a flexible plastic guard covering the opening where the cut metal comes off the machine; however, at some point after Axis purchased the machine, the guard had been removed or fallen off. Patrick Hughes, the owner of Axis, testified that the guard was not replaced because there was no reason for anyone to be at the back of the machine since the cut metal would normally come off the machine without assistance and fall harmlessly to the floor. He further testified that because the guard, when it had been in place, was flexible, a hand could be placed under it. When Thomas trained Tipton on the use of the Piranha, he showed him the machine's various functions and told him not to put his fingers in the area of the blades. Tipton used the machine five or six times prior to this incident but had never used it to cut sheet metal.

Thomas was authorized to permit employees to use the equipment after work for personal use. On the day of the incident, Tipton, after finishing his work for the day, asked Thomas for permission to cut some sheet metal into gussets[3] for his tractor at home. Thomas consented. The two men brought a piece of scrap sheet metal over to the Piranha. Thomas put the metal into the machine, asked Tipton if he was "ready" or "clear," and began to cut the metal into four-inch squares. To speed up the process, Tipton caught the pieces of metal as they came out the back and handed them back to Thomas so they could be cut into triangles. Although Tipton and Thomas could observe each other's face during the cutting process, the machine blocked Thomas's view of Tipton's hands. Two cuts were made without incident; however, on the third cut, the sheet metal folded down as it exited the machine, crushing Tipton's right index finger. His finger was ultimately amputated.

---

[3]Gussets are triangular pieces of metal used for reinforcement.

Thomas testified he was aware sheet metal, especially smaller pieces, had a tendency to fold while being cut, but he did not warn Tipton of this tendency. Tipton testified that he did not know that sheet metal could fold during the cutting process. He confirmed that he had not been advised of this fact prior to his injury.

A warning sign was placed on the wall next to the machine stating that the machine is designed for use by only one operator at a time. A warning sticker was also placed on the back of the machine, which stated, "Do not place hand near moving parts" and showed a picture of fingers being cut by the machine's blades. Tipton saw both warning signs. He took the sign on the machine to mean only that he should not place his fingers near the blades. He stated that he did not believe his fingers would be in the way of any moving parts when he engaged in the process of catching the metal pieces as they exited the machine. Tipton testified that had the plastic guard been in place, he probably would have let the pieces of metal hit the floor, rather than attempting to catch them.

Tipton brought this action against Thomas and Axis, seeking damages for his injury. His wife, Kristie Tipton, sought damages for loss of consortium. In their complaint, the plaintiffs alleged that the defendants owed a duty of care regarding the use of the Piranha and that they had breached this duty "by failing to warn [Tipton] of the dangers of the machine, failing to operate the machine in a safe manner, and by removing certain guards provided by the manufacturer, which are intended to prevent injuries such as those that occurred to the plaintiff." The case proceeded to trial before a jury. At the close of the plaintiffs' proof, the defendants moved for a directed verdict on the basis that the plaintiffs had failed to show a breach of ordinary care by the defendants. The trial court granted the motion, finding "no duty existed on the part of either of these defendants toward the plaintiff other than one of ordinary care" and "the record is void of any evidence that would be sufficient to sustain a jury verdict on the issue of whether or not ordinary care was breached in this particular case." This appeal followed.

II.

To successfully assert a negligence claim, a plaintiff must prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below that standard amounting to a breach of duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *Coln v. City of Savannah,* 966 S.W.2d 34, 39 (Tenn. 1998). The first element, the existence of a duty, is a question of law for the court. *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993). In determining the existence of a duty, "the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm." *Rice v. Sabir,* 979 S.W.2d 305, 308 (Tenn. 1998). A risk is deemed unreasonable if the foreseeability and gravity of the potential harm outweighs the burden on the defendant in engaging in alternative conduct to prevent the harm. *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995).

The plaintiffs' claims against Axis are predicated upon a theory of premises liability. "[A]n owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises." *Rice,* 979 S.W.2d at 308. This duty includes removing or

warning against latent or hidden dangerous conditions on the premises of which the owner/occupier is aware or should have been aware through the exercise of due care. *Id.* A duty of reasonable care may arise, however, even if the condition is "open and obvious." *Coln,* 966 S.W.2d at 43. "[I]f the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care." *Id.* The duty of an owner/occupier, however, does not extend to the removal of or warning against conditions that the owner/occupier could not have discovered with reasonable care or conditions for which an unreasonable risk could not be anticipated. *Rice,* 979 S.W.2d at 309. In short, the key element of duty is foreseeability: "If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability." *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 178 (Tenn. 1992).

III.

The plaintiffs claim that both Axis and Thomas owed a duty of care to Tipton and that they breached that duty by failing to warn Tipton of the possibility of the metal folding as it exited the machine. The plaintiffs further argue that Axis breached its duty of care by failing to replace the missing plastic guard on the machine.

Viewing the evidence in a light most favorable to the plaintiffs – which we are required to do at this stage of the proceedings – we hold that the trial court erred in directing a verdict in favor of the defendants.

The evidence presented by the plaintiffs demonstrated that Thomas was aware of the potential for the sheet metal to fold as it exited the machine. Tipton testified that he was not aware of this danger. The defendants argue that Thomas did not know that Tipton was at risk of injury because Thomas could not see the location of Tipton's hands while the machine was in operation. While Thomas could not see the plaintiff's hands, he could see that Tipton was standing at the back of the machine. Moreover, once the pieces were cut, Tipton handed them back to Thomas. Based upon the fact that the pieces did not fall to the floor, Thomas knew or should have known that Tipton was catching the pieces and that his hands might well be too close to the area where the metal exited the machine. Therefore, a jury could reasonably conclude that Thomas knew or should have known that Tipton was at risk of injury from the metal folding as it came out of the machine and that Thomas acted unreasonably in operating the machine without warning Tipton of the danger involved in the latter's conduct.

The defendants contend that the signs placed on and around the machine adequately warned Tipton of the dangers associated with the machine. We do not agree. The sign on the wall warned that the machine is designed to be used by only one operator at a time. The warning sticker on the machine cautioned one to keep his or her hands away from moving parts and showed an illustration of fingers being cut by the blades. The plaintiff acknowledged that he read these warnings. However, Tipton was not operating the machine when he was injured; Thomas was performing this

function.  Furthermore, Tipton was not injured by the machine's moving parts; he was injured as the sheet metal exited the machine and unexpectedly, as least to him, folded, thereby crushing his finger. Because the signs did not address the type of danger that caused the injury in this case, a reasonable jury could conclude that the warning signs did not satisfy the defendants' duty of care.

Finally, we find that the trial court erred in directing a verdict for Axis because a reasonable jury could conclude that Axis was vicariously liable for Thomas' culpable conduct and/or that it breached its duty of reasonable care by allowing someone to utilize the machine without an appropriate warning and/or by failing to replace the missing guard on the machine.  Tipton testified that had the guard been in place, or if he had been aware that the manufacturer had originally placed a guard in that area, he "would have probably let the material hit the floor."  Based on this evidence, a jury could conclude that had Axis replaced the missing guard, Tipton's injury could have been avoided.

In sum, we hold that the trial court erred in directing a verdict for the defendants.  Having produced material evidence to support their theories, the plaintiffs are entitled to have their claims considered by a jury.

IV.

The judgment of the trial court is vacated.  This case is remanded to the court below for further proceedings, consistent with this opinion.  Costs on appeal are taxed to the appellees, Axis Manufacturing & Machine Company and Jeff Thomas.

_____
CHARLES D. SUSANO, JR., JUDGE